United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Marleny Maximiliano Guerra

Petitioner,

v.

Sergio Albarran et al.,

Respondents.

Case No. 3:26-cv-07281

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 2

Petitioner Marleny Maximiliano Guerra moves the Court *ex parte* for a temporary restraining order that would, among other things, require her immediate release from ongoing detention by agents of Immigration and Customs Enforcement ("ICE") and prohibit ICE from re-arresting her without notice and a pre-detention bond hearing.[1] For the reasons set forth below, the Court grants the requested order. The Court orders respondents to release petitioner from ongoing detention and prohibits respondents from re-arresting or otherwise re-detaining petitioner without first providing a pre-detention bond hearing before an immigration judge at which the government establishes by clear and convincing evidence that petitioner's detention is necessary to prevent her flight or to protect the public.

## BACKGROUND

The evidence before the Court establishes that petitioner, a non-citizen and native of Peru,

[1] Petitioner asks the Court to order that she remain within the Northern District of California in order to preserve this Court's jurisdiction over her petition. But it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004). Petitioner also requests that the Court prohibit her deportation during the pendency of the underlying case. At this time, however, the threat of deportation is too remote to warrant emergency *ex parte* relief.

entered the United States in 2023. After briefly detaining petitioner at the border, ICE agents released her into the country and issued a notice to appear in immigration court. For three years, petitioner has resided in the United States. Petitioner has no criminal record. She filed an application for asylum on October 10, 2024. She was issued a removal order *in absentia* on March 17, 2026, because she did not appear at an immigration court hearing whose notice changing the date of the hearing from March 25, 2026, to March 17, 2026, was sent to her old, incorrect address. Petitioner contends that she timely filed a motion to reopen her removal proceedings on May 13, 2026, but that the motion was rejected for lack of a filing fee; she maintains a filing fee was not required under 8 C.F.R. § 1003.23(b)(2)(b). She filed a second motion to reopen on June 10, 2026, again without a filing fee, and her motion was again rejected for lack of a filing fee. She filed a third motion to reopen on July 14, 2026, with proof of payment. Petitioner argues that her motion to reopen automatically stays her removal until an immigration court renders a final decision on her motion.

On July 15, 2026, petitioner appeared at the immigration court in San Francisco for a master calendar hearing. At a scheduled check-in under her order of release on recognizance, ICE agents arrested her. At the time of the filing of her habeas petition, petitioner was being held at ICE's San Francisco field office at 630 Sansome Street.

Petitioner, with representation of counsel, filed a petition for a writ of habeas corpus and an *ex parte* motion for a temporary restraining order on July 15, 2026. She contends that her arrest and detention violates the Due Process Clause of the Fifth Amendment both substantively (because respondents allegedly have no valid interest in detaining petitioner) and procedurally (because respondents have not or would not provide pre-detention bond hearings), as well as the First and Fourth Amendments and the Administrative Procedure Act. The respondents are Sergio Albarran, Director of ICE's San Francisco Field Office; Todd Lyons, Acting Director of ICE; Secretary of Homeland Security Markwayne Mullin; and Acting Attorney General Tood Blanche.

**LEGAL STANDARDS**

The standard for issuing a temporary restraining order is largely identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir.

2017). Petitioners seeking such relief must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

Although the substantive standards for both motions are similar, the timeframe for a temporary restraining order is different. While a preliminary injunction remains in effect pending final resolution of the litigation, "a TRO 'should be restricted to … preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

Federal Rule of Civil Procedure 65(b)(1) allows a temporary restraining order to be issued without notice to the opposing party—i.e., *ex parte*—only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

**ANALYSIS**

As an initial matter, petitioner has satisfied the requirements for issuance of an *ex parte* order. The affidavit of petitioner's counsel demonstrates that petitioner will suffer immediate and irreparable injury, loss, or damage by virtue of her continued detention before respondents can be heard in opposition, and that counsel attempted to contact Civil Division chief Pamela Johann of

the United States Attorney's Office for the Northern District of California on July 15, 2026.

With respect to the showing required to justify petitioner's requested relief, she has demonstrated a likelihood of success on the merits of her claim that her ongoing detention violates her procedural due process rights under the Due Process Clause of the Fifth Amendment. The Court recently considered that issue under similar circumstances in *Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, __ F. Supp. 3d __, 2025 WL 2935630 (N.D. Cal. Oct. 15, 2025). For the reasons explained in far greater detail therein, a noncitizen like petitioner who was conditionally released into the United States has a significant liberty interest in remaining out of immigration custody. *Id.* at *5.[2] The statutory procedures potentially available to petitioner do not satisfy that constitutional mandate. Even assuming that petitioner will receive a post-arrest bond hearing before an immigration judge, there remains a substantial risk that the government is erroneously depriving her of her liberty in the meantime, as the available record suggests that petitioner is neither a flight risk nor a danger to the public *See id.* at *8; *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Given the apparent lack of a valid basis on which to detain petitioner and the limited cost of providing a custody hearing in immigration court, the government has at most a minimal countervailing interest in her continued detention. *See Pablo Sequen*, 2025 WL 2935630 at *12; *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1036 (N.D. Cal. 2025). Taken together, the strength of petitioner's liberty interest, the high likelihood of erroneous deprivation, and the government's minimal countervailing interest demonstrate that petitioner is likely to succeed on the merits of her procedural due-process claim. *See Pablo Sequen*, 2025 WL 2650637 at *12; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of

[2] Because petitioner is "challenging their detention[], not the processes by which applications for admission [into the United States] are decided , … the cases limiting the due process rights of noncitizens to challenge how applications for admission are decided are inapplicable." *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *1 (N.D. Cal. Sept. 26, 2025). Even if petitioner were challenging such processes, the Fifth Amendment would still entitle her to due-process protections because she has resided in the United States for three years—certainly long enough to "begin[] to develop … ties" and become "a part of our population." *Pablo Sequen v. Albarran*, 2025 WL 2935630, at *5 (first quoting *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); and then quoting *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903)).

temporary relief due to her ongoing and likely unconstitutional deprivation of liberty. "The loss or threatened infringement upon [constitutional] rights for even minimal periods of time unquestionably constitutes irreparable injury." *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019) (citation modified). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified). "[I]t follows inexorably from [the Court's] conclusion" that petitioner "will likely be deprived of [her] physical liberty unconstitutionally in the absence of the injunction ... that [she] ha[s] also carried [her] burden as to irreparable harm." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

The final two *Winter* factors, the balance of the equities and public interest, merge because the government is the opposing party. These factors also weigh heavily in favor of granting a temporary restraining order. "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird*, 81 F.4th at 1042 (citation modified). Further, "the Ninth Circuit has recognized that 'the costs to the public of immigration detention are staggering.'" *Jorge M. F. v. Wilkinson*, No. 21-CV-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (citation modified) (quoting *Hernandez*, 872 F.3d at 996). And where petitioner is suffering irreparable harm while in detention, the potential harm to the government—at worst, a short delay in detaining petitioner until it makes the requisite showing of necessity before a neutral decisionmaker—is minimal. *See id.* at *3; *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). In any case, enjoining the government from constitutional violations does not impose harm "in any legally cognizable sense." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).

Finally, petitioner's immediate release is required to return her to the status quo. The "status quo" refers to the state of the parties' relationship "before the action challenged in the complaint occurred." *Youth 71Five Ministries v. Williams*, 153 F.4th 704, 717 (9th Cir. 2025), *as amended*. Here, that is the moment prior to petitioner's likely illegal detention. *See Pablo Sequen*, 2025 WL 2650637, at *4 n.2; *Kuzmenko v. Phillips*, No. 25-CV-00663, 2025 WL 779743, at *2

(E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Because petitioner satisfies all of the requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the motion for a temporary restraining order is granted. *See Pablo Sequen v. Kaiser*, No. 25-CV-06487-PCP, 2025 WL 2203419, at *3 (N.D. Cal. Aug. 1, 2025) (collecting similar cases). And because "there is no realistic likelihood of harm to the [respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security is needed to ensure that respondents will be reimbursed for "costs and damages sustained by … hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that petitioner's motion for a temporary restraining order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents are **ORDERED** to immediately release petitioner from custody and are **ENJOINED AND RESTRAINED** from re-detaining petitioner without first providing a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that petitioner's detention is necessary to prevent her flight or to protect the public. Should respondents choose to conduct such a hearing, respondents are **ORDERED** to provide petitioner with reasonable advance notice of the time and place of the hearing.

This Order shall remain in effect until July 29, 2026. The Petition for Writ of Habeas Corpus, Dkt. No. 1. Motion for Temporary Restraining Order, Dkt. No. 2, and this Order **SHALL** be served on respondents such that they receive actual notice as soon as possible. This service shall include, but not be limited to, emailing the documents identified above by email to pamela.johann@usdoj.gov. Petitioners shall file proof of service or a status report by no later than July 16, 2026, at 5:00pm. Respondents shall provide a status report confirming the release of Petitioner by no later than July 16, 2026, at 5:00pm.

Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should

United States District Court
Northern District of California

not issue in favor of petitioner. The hearing will be held in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, on Monday, July 27, 2026. Respondents shall file a response to petitioner's motion by no later than Monday, July 20, 2026. Any reply shall be filed by Friday, July 24, 2026.

**IT IS SO ORDERED.**

Dated: July 15, 2026

P. Casey Pitts
United States District Judge